ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 14 2008

JAMES N. HASTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CCP hf and CCP NORTH AMERICA, INC., ) ) ) | |
| Plaintiffs, ) ) | CIVIL ACTION **-MHS** |
| Vs. ) ) | FILE NO.: |
| WORLD WRESTLING ENTERTAINMENT, INC., ) ) ) | **1 08-CV-0490** |
| Defendant. ) | |

## COMPLAINT

Plaintiffs CCP hf and CCP North America, Inc. (hereinafter collectively referred to as "CCP") seek injunctive relief against and damages from Defendant World Wrestling Entertainment, Inc. for its trademark infringement and unfair competition in violation of the laws of the United States and the State of Georgia.

### I. Parties

1. CCP hf is an Icelandic corporation, with its principal place of business in Reykjavik, Iceland.

2. CCP North America, Inc. ("CCP NA") is a Georgia corporation with its principal place of business in Georgia.

3. CCP NA is a wholly owned subsidiary of CCP hf.

1

4.     Defendant World Wrestling Entertainment, Inc. ("WWE") is a
Delaware corporation with its principal place of business in Connecticut. Process
may be perfected by serving WWE's registered agent in Georgia, CT Corporation
System, located at 1201 Peachtree Street NE, Atlanta, Georgia, 30361.

## II.     Jurisdiction and Venue

5.     This action arises under the Lanham Trademark Act (15 U.S.C. §
1125(a)) and the Georgia Uniform Deceptive Trade Practices Act (O.C.G.A. § 10-
1-370 et seq.).

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§
1331 and 1338(a) and (b), and the principles of supplemental jurisdiction.

7.     The venue of this action is properly laid in the Northern District of
Georgia pursuant to 28 U.S.C. § 1391(b).

8.     This Court has personal jurisdiction over WWE, which has minimum
contacts with this State and district by conducting business, committing torts, and
causing injury in this State and District.

## III.   Allegations Common To All Claims For Relief

### A.     CCP's Trademark

9.     CCP and White Wolf, Inc. merged on November 11, 2006.

2

10.     As a result of the merger, CCP is the successor in interest to all intellectual property interests owned by White Wolf.

11.     White Wolf's business, now conducted by CCP NA, includes writing, creating, printing, publishing, and distributing books, magazines and role playing games in both print and computer media, and selling related merchandise.

12.     One of White Wolf's signature product lines is *Vampire: the Masquerade*, a role-playing game, and its derivative works.

13.     *Vampire: The Masquerade* was first published in 1991, and is registered with the United States Copyright Office, Registration Number TX 5-869-195.

14.     In *Vampire: the Masquerade*, White Wolf created fanciful and distinctive clan names for its vampire characters.

15.     These clan names include "Gangrel."

16.     Gangrel was first used in commerce in 1991, and has been continually used in commerce by White Wolf, and its successor CCP, to the present day.

17.     CCP has used and intends to continue using Gangrel in commerce in various markets, including print media, online media, computer games, and merchandise.

3

**B.     License to WWE**

18.     WWE is the successor in interest to Titan Sports, Inc. ("Titan").

19.     In 1998, Titan began promoting David Heath, a wrestler under
contract to Titan, as a vampire named "Gangrel."

20.     White Wolf contacted Titan regarding its infringement of White
Wolf's trademark rights in and to Gangrel.

21.     Titan and White Wolf thereafter entered into a license agreement (the
"License") through which Titan obtained the right to use the Gangrel mark in
connection with wrestling entertainment.

22.     The License had an effective date of October 1, 1998 and continued
through September 30, 2003.

23.     The License expressly stated that it could be renewed for an additional
five-year period.

24.     Pursuant to the License, Titan promoted David Heath as Gangrel and
permitted him to wrestle as the vampire Gangrel at numerous World Wrestling
Federation and World Wrestling Entertainment events, including live events,
televised events, and pay-per-view events.

25.     WWE succeeded Titan during the license term.

4

26.    Upon information and belief, Titan and WWE exploited the trademark through merchandising, print media and video sales.

27.    Upon the expiration of the license, WWE declined to and did not exercise its option to renew the License.

## C.    The Infringements

28.    Upon the expiration of the License, WWE had no right to use the trademark Gangrel for any purpose.

29.    Notwithstanding the expiration of the license, WWE continued to use CCP's trademark.

30.    WWE's infringing uses of the Gangrel mark include but are not limited to appearances by Heath as Gangrel in the following live and/or televised programs: *WWE RAW* on June 21, 2004; *WWE SmackDown!* on June 24, 2004; *WWE Smackdown!* on September 16, 2004; *WWE Smackdown!* on September 23, 2004; *WWE Raw* on December 10, 2007.

31.    WWE also allowed Mr. Heath to appear using the Gangrel mark in multiple events with wrestling organizations related to the WWE, including Ohio Valley Wrestling and Deep South Wrestling, in 2005 and 2006.

5

32.    Subsequent to WWE's use of the mark in 2004, White Wolf contacted
WWE regarding the expiration of the License and WWE's infringement of the
Gangrel trademark.

33.    White Wolf offered to renew the License.

34.    WWE refused to renew the license.

35.    On December 10, 2007, *WWE RAW* televised a "15th Anniversary
Special" which included a 15-man "Battle Royal" featuring former *WWE RAW*
"superstars."

36.    One of the wrestlers who appeared in the Battle Royal was Gangrel.

37.    During his entrance to the ring, the wrestler was identified as Gangrel,
both audibly by the announcers and visually on the television screen.

38.    Throughout the match, as in the 2004 matches, the ring announcers
referred to the wrestler exclusively as Gangrel.

39.    WWE also used CCP's trademark in promoting the 15th Anniversary
and the Battle Royal both prior to and after the event.

40.    For example, WWE used the Gangrel trademark on its website, with a
separate webpage devoted to the event.

41.    On December 18, 2007, CCP sent a cease and desist letter to WWE
regarding the expiration of the License and its infringing use of Gangrel.

6

42.    Subsequent to CCP's cease and desist letter, WWE removed the

"Returning Superstars" webpage that included Gangrel from its website.

43.    CCP and WWE exchanged correspondence through counsel.

44.    Eventually WWE's counsel addressed CCP's substantive allegations

and denied the infringement claiming its use of Gangrel was a fair use.

### IV.    Claims Against WWE

### Count I
### Unfair Competition Through False Designation of Origin

45.    CCP incorporates by reference the allegations contained in Paragraphs

1 through 44 above, as if fully set forth herein.

46.    WWE has and is engaged in acts of unfair competition through the use

of false designation of origin and false advertising in violation of Section 43(a) of

the Trademark Act of 1946, 15 U.S.C. § 1125(a).

47.    WWE has used and is using CCP's trademark in connection with its

wrestling business, promotions, live and televised events, and merchandise.

Accordingly, WWE has made and is making false express and implied

representations that WWE's events and merchandise originate with, are associated

with, and/or are endorsed by CCP in such a manner as to create a likelihood of

confusion among WWE's viewers, customers and potential viewers and customers.

7

48.     WWE's acts have damaged, impaired and diluted CCP's goodwill in the Gangrel trademark to CCP's irreparable damage.

49.     WWE's use of the Gangrel trademark in connection with its business constitutes false designation of origin, and WWE's representations that its wrestler and related goods and services originates with or is endorsed by CCP constitute false descriptions or representations of fact within the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

50.     WWE's use of the Gangrel trademark was willful and with conscious disregard of CCP's rights in and to the Gangrel trademark and the expiration of the License.

51.     WWE's use of CCP's Gangrel trademark constitutes unfair competition entitling CCP to remedies afforded pursuant to Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), including the trebling of damages.

52.     This is an exceptional case under 15 U.S.C. § 1125(a).  CCP is therefore entitled to recover its attorneys' fees from WWE.

## Count II
## Deceptive Trade Practices

53.     CCP incorporates by reference the allegations contained in Paragraphs 1 through 44 above, as if fully set forth herein.

8

54.    This Count arises under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq.

55.    WWE has created a likelihood of confusion as to the sponsorship and endorsement of its wrestlers, events, promotions, and its related products and merchandise by the televising and distribution of matches and promotions for matches featuring the Gangrel character in Georgia and the United States, where CCP has previously used and established significant goodwill in and to the Gangrel trademark.

56.    The acts of WWE complained of herein violate the Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq.

57.    WWE willfully engaged in the use of the Gangrel trademark knowing the use to be unauthorized and deceptive.

58.    CCP is entitled to equitable injunctive relief against WWE restraining and enjoining it from using the mark in its wrestling programs and on any related products and merchandise, and its expenses of litigation, including its reasonable attorneys' fees.

9

## Count III
## Fraud Pursuant to O.C.G.A. § 23-2-55

59. CCP incorporates by reference the allegations contained in Paragraphs 1 through 44 above, as if fully set forth herein.

60. WWE has and is engaged in fraudulent acts or practices in violation of the prohibition against unfair competition found at O.C.G.A. § 23-2-55.

61. WWE has used and is suing CCP's Gangrel trademark in connection with the marketing, promotion and sale of its goods and services in such a manner as to misrepresent the source, sponsorship and/or approval of its products and services.

62. The use of the Gangrel trademark by WWE creates the unreasonable risk that viewers and purchasers may falsely conclude that there exists some affiliation, connection, or association between and among CCP and WWE.

63. WWE's acts have damaged, impaired and diluted that part of CCP's goodwill and good name symbolized by the Gangrel trademark. The nature, probable tendency and effect of WWE's use of the Gangrel trademark is to enable WWE to deceive the public.

64. WWE's use of the Gangrel trademark constitutes unfair competition as prohibited by O.C.G.A. § 23-2-55.

10

65.     WWE had actual knowledge of CCP's rights, and the expiration of the License, at the time it decided to use the Gangrel trademark. Thus, WWE willfully and deliberately infringed upon CCP's rights.

66.     WWE's unfair business practices are of a recurring nature and are harmful to consumers and the public at large, as well as to CCP. These practices constitute unlawful, unfair, and fraudulent business practices.

67.     As a result of WWE's acts, CCP has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount in controversy requirements of this Court. Unless enjoined by this Court, WWE will continue these acts, thereby causing CCP further immediate and irreparable damage.

68.     WWE's infringement and unfair competition were fraudulent and willful and malicious, such that is raises the presumption of a conscious indifference to the consequences of their actions, thereby entitling CCP to an award of exemplary damages in an amount to be determined by the enlightened conscience of a jury.

### Count IV
### Expenses of Litigation

69.     CCP incorporates by reference the allegations contained in Paragraphs 1 through 44 above, as if fully set forth herein.

11

70. Defendant has acted in bad faith, been stubbornly litigious and/or caused CCP unnecessary trouble and expense, entitling CCP to recover its expenses of litigation, including their reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE Plaintiffs CCP hf and CCP North America, Inc. respectfully pray for the following relief:

A. An Order preliminarily and permanently enjoining and restraining Defendant and those in active concert or participation with it from:

1. Further infringing Plaintiffs' trademark or manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Plaintiffs which infringe on Plaintiffs' trademark;

2. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed or sold by Defendant is in any manner associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

12

3.      Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of any of Plaintiffs' trademarks or of Plaintiffs' rights in, or to use or to exploit, said trademarks or constituting any dilution of Plaintiffs' name, reputation or goodwill;

4.      Secreting, destroying, altering, removing or otherwise dealing with the unauthorized products or books or records which contain any information relating to the creation, production, distribution, circulation, sale, rental, offering for sale, advertising, promoting or displaying the trademark Gangrel and any related products and merchandise.

B.      Directing that Defendants recall all copies of any video, DVD, or print media featuring Gangrel and all related products and merchandise distributed subsequent to October 1, 2003, throughout the United States and the World pursuant to 15 U.S.C. § 1118.

C.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that the wrestling character Gangrel and any related products or merchandise are authorized by CCP or are in any way related to CCP or its products.

D.      Directing that an accounting and judgment be rendered against Defendant for:

13

1.    All profits received by Defendant from the exhibition,

televising, or video distribution of any matches featuring Gangrel and the

sale of all related products and merchandise, as provided for by 15 U.S.C. §

1117(a);

2.    All profits received by Defendant and all damages sustained by

Plaintiffs or their licensees on account of Defendant's unfair competition;

and

3.    Damages in the amount of Defendant's profits, trebled pursuant

to 15 U.S.C. § 1117(a).

E.    An award of exemplary damages against Defendant for their willful

and malicious infringement and unfair competition

F.    Ordering that Plaintiffs recover the costs of this action together with

reasonable attorneys' fees and investigators' fees and prejudgment interest in

accordance with 15 U.S.C. § 1117(a) and O.C.G.A. § 13-6-11.

G.    Directing that the Court retain jurisdiction of this action for the

purpose of enabling Plaintiffs to apply to the Court for such further orders and

directions as may be necessary or appropriate for the interpretation or execution of

any order entered in this action, for the modification of any such order, for the

enforcement or compliance therewith and for the punishment of any violations thereof.

H.     Awarding to Plaintiffs such other and further relief as the Court may deem just and proper, together with the costs and disbursements which Plaintiffs has incurred with this action.

## TRIAL BY JURY

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted, this 14th day of February, 2008.

FELLOWS LABRIOLA LLP

Steven M. Kushner
Georgia Bar No. 430510
Thomas J. Mihill
Georgia Bar No. 001363

Peachtree Center
Suite 2300, South Tower
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

Attorneys for Plaintiffs