IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CCP HF AND CCP NORTH AMERICA, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v.  ) <br> ) <br> ) <br> WORLD WRESTLING ) <br> ENTERTAINMENT, INC., ) <br> ) <br> Defendant. ) <br> _____) | CIVIL ACTION <br> NO. 08-CV-0490-MHS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits this memorandum of law in support of its motion to dismiss (the "Motion to Dismiss") Plaintiffs' Complaint in its entirety.

### I. INTRODUCTION

Plaintiffs' claims in this action are foreclosed by the Supreme Court's decision in *Dastar v. Twentieth Century Fox Film Corp.,* 539 U.S. 23 (2003). The gravamen of this lawsuit is WWE's alleged depiction of a vampire-like character named "Gangrel" within the storylines of WWE's live and televised sports

1

entertainment programs without Plaintiffs' authorization.  Plaintiffs claim to own all intellectual property interests to the fantasy role-playing game, *Vampire: the Masquerade*, in which "Gangrel" is the name of a clan of vampire characters.  Plaintiffs' Complaint alleges that WWE's depiction of the vampire-like character, "Gangrel," in its programs constitutes "unfair competition through false designation of origin" under Section 43(a) of the Lanham Act and violations of analogous Georgia state deceptive trade practices and unfair competition laws.

These claims, however, are untenable under *Dastar*.  In *Dastar*, the Supreme Court held that the "origin or work" provision of Section 43(a) only protects the producer of tangible goods or services offered for sale in the marketplace and not the author or creator of any idea, concept, or communication embodied in those goods.  *Dastar*, 539 U.S. at 37; *Redwin Wilchcombe v. Teevee Toons, Inc.*, 515 F. Supp. 2d 1297, 1305 (N.D. Ga. 2007) (Shoob, J.).  Applying the Supreme Court's holding here, WWE—not Plaintiffs—indisputably is the "origin" of the live and televised programs in which the vampire-like character "Gangrel" is alleged to have appeared.  Indeed, Plaintiffs' Complaint concedes that WWE's live and televised programs were marketed by WWE as being produced by WWE.  Because WWE is the "origin" of those wrestling programs, any alleged use of the

"Gangrel" character embodied in the programs cannot give rise to a claim for false designation of origin as a matter of law.

## II. FACTUAL BACKGROUND

Although WWE disputes many of the allegations of the Plaintiffs' Complaint, for purposes of this Motion only, the well-pled allegations of the Complaint are assumed to be true.

WWE is a well-known media and entertainment company. *See* WWE's 2007 10-K at 2 attached as Exhibit 1.[1] WWE has been involved in the sports entertainment business for more than twenty-five years, and has developed WWE into one of the most popular brands in global entertainment today. *See id.* WWE develops unique and creative content centered around its performers—referred to as WWE Superstars—and presented on its live and televised programs. *See id.* At the heart of WWE's success are the athletic and entertainment skills of its "WWE Superstars," and WWE's consistently innovative and multi-faceted storylines

---

[1] This Court may take judicial notice of public records on file with the Securities and Exchange Commission in considering a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006); *Stephens v. State Farm Fire and Cas. Co.*, No. 1:03-CV-3094-JTC, 2004 WL 5546250, at *2 (N.D. Ga. June 23, 2004) ("[T]he Eleventh Circuit has held that, when considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

3

across its three brands: Raw, Smackdown and ECW. Each of these brands is promoted through distinct live and televised programs. *See id.*

In November 2006, Plaintiffs claim to have merged with White Wolf, Inc. ("White Wolf") and, as a result of the merger, succeeded to all intellectual property interests owned by White Wolf. *See* Complaint ¶¶ 9-10. Certain of those intellectual property interests allegedly include the fantasy role-playing game, *Vampire: the Masquerade*, in which Plaintiffs claim copyright ownership. *See id.* at ¶¶ 12-13. Plaintiffs allege that White Wolf created fanciful and distinctive clan names for the vampire characters in *Vampire: the Masquerade*. One such clan name is "Gangrel." *See id.* at ¶¶ 14-15.

Plaintiffs allege that in 1998 WWE's predecessor-in-interest, Titan Sports, Inc. ("Titan"), introduced a vampire-like character known as "Gangrel," portrayed by wrestler David Heath, in the storylines of its live and televised sports entertainment programs. *See id.* at ¶ 19. In October 1998, Plaintiffs allege that Titan entered into a license agreement with White Wolf to use the "Gangrel" name and vampire character in connection with wrestling entertainment. *See id.* at ¶¶ 21-22. The agreement allegedly expired on September 30, 2003 and was not renewed. *See id.* at ¶ 27.

Plaintiffs allege that, upon expiration of the license, WWE had no right to use "Gangrel" in connection with its sports entertainment programs. *See id.* at ¶ 28. Plaintiffs claim that after the expiration of the license, WWE depicted David Heath as the vampire character "Gangrel" on WWE's *RAW* television program on or about June 21, 2004 and on WWE's *SmackDown* television program on or about June 24, 2004, September 16, 2004, and September 23 2004. *See id.* at ¶ 30. Plaintiffs further claim Mr. Heath appeared as "Gangrel" on WWE's *Raw* 15th Anniversary Special program on or about December 10, 2007, in which he was depicted in a 15-man "Battle Royal" featuring former WWE *RAW* characters, and that WWE displayed the "Gangrel" name and character on its website (www.wwe.com) in connection with the promotion of that program. *See id.* at ¶¶ 30, 35-40. The Complaint also alleges that WWE "allowed" Mr. Heath to appear as "Gangrel" in wrestling shows sponsored or produced by wrestling organizations supposedly related to WWE, including Ohio Valley Wrestling and Deep South Wrestling, in 2005 and 2006. *See id.* at ¶ 31.

### III. LAW AND ARGUMENT

#### A. Legal Standard

The Supreme Court recently clarified the governing Rule 12(b)(6) standard in *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955 (2007). "Specifically, the

Supreme Court in *Twombly* heightened the pleading standard for complaints attacked by a Rule 12(b)(6) motion to dismiss." *Mizzaro v. Home Depot, Inc.*, No. Civ.A. 1:06-CV-11510, 2007 WL 2254693, at *3 (N.D. Ga. July 18, 2007) (granting Rule 12(b)(6) motion to dismiss).

To survive a motion to dismiss, a complaint must contain sufficient "[f]actual allegations…to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965); *Watts v. Florida Int'l University*, 495 F.3d 1289, 1296 (11th Cir. 2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65.  The complaint must provide enough factual detail to raise a "reasonable expectation" that discovery will corroborate the allegations.  *Watts*, 495 F.3d at 1296; *Twombly*, 127 S.Ct. at 1965.   In other words, a plaintiff must not only state a possible claim, he must state a plausible one. *Id.*

### B.   Plaintiffs' Lanham Act Claim is Foreclosed By *Dastar*

Under the relevant provisions of Section 43(a) of the Lanham Act, it is unlawful for

> [a]ny person . . . on or in connection with any goods or services . . . [to] use[] in commerce . . . any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive . . . as to the

> origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A). "There are, however, limits to the sweep of § 1125(a)(1)(A) especially where, as here, the goods at issue consist of intellectual property." *Beckwith Builders, Inc. v. Depietri,* No. 04-cv-282, 2006 WL 2645188 at *14 (D. N.H. Sept. 15, 2006); *see also Dastar*, 539 U.S. at 29 ("§ 43(a) 'does not have boundless application as a remedy for unfair trade practices'") (citation omitted).

In *Dastar*, the Supreme Court held that "the phrase 'origin of goods' in the Lanham Act . . ., refers to the producer of the tangible goods that are offered for sale, and not to the author, of any idea, concept, or communication embodied in those goods." *Dastar,* 539 U.S. at 37 (citation omitted). The plaintiffs in *Dastar* had acquired the exclusive television and video rights to a television series that first aired in the late-1940's called "Crusades in Europe." *See id.* at 26. Dastar later released a video set of "Crusades in Europe" (based on the original footage for the television series which was in the public domain) without reference or credit to the "Crusades in Europe" television series in which plaintiffs owned exclusive rights. *See id.* at 26-27. The Supreme Court rejected the plaintiffs' claim for false designation of origin "because Dastar accurately identified itself as the manufacturer of the physical videos, even if it had not accurately credited

7

others with the creative content of the video." *Zyla v. Wadsworth*, 360 F.3d 243, 252 (1st Cir. 2004).

Although *Dastar* focused on the origin of "tangible" goods sold in the marketplace, the *Dastar* analysis has been equally applied to false designation of the origin claims with respect to intangible goods or services. *See McCardle v. Mattel, Inc.*, 456 F. Supp. 2d 769, 783 (E.D. Tex. 2006) (dismissing plaintiff's Section 43(a) claim because "[t]o the extent plaintiff's passing off claim is raised to protect his interest in intellectual content of the *Fairytopia* product, it is not actionable"); *Beckwith Builders*, 2006 WL 2645188 at *14 (dismissing Section 43(a) with respect to alleged false designation of origin of the intellectual property embodied in the design of a house because signs in front of the house accurately identified those who physically produced the tangible object); *Williams v. UMG Recordings, Inc.*, 281 F. Supp.2d. 1177, 1184 (C.D. Cal. 2003) (rejecting argument that *Dastar* does not apply to "origin of services" in dismissing Section 43(a) claim).

In particular, *Dastar* has been applied to preclude false designation of origin claims based on the content of television programming. *See TMTV Corp. v. Pegasus Broadcasting of San Juan*, 490 F. Supp. 2d 228, 237 (D. Puerto Rico 2007) (dismissing Section 43(a) claim based on producers' and actors' alleged use

of plaintiff's "creative ideas without crediting it"); *Contractual Obligation Prods., LLC,* No. 04 Civ. 2867, 2006 U.S. Dist. LEXIS 16402, at **25-26 (S.D.N.Y. March 31, 2006) ("In *Dastar*, the Court held that the Lanham Act does not apply to claims involving a failure to attribute or credit the origin of creative work."); *Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 392 F. Supp. 2d 297, 313 (D. Conn. 2005) ("The clear import of *Dastar* is that any protection for the misappropriation of [a television program's] content comes from the Copyright Act, not from the Lanham Act.").

The recent decision in *TMTV Corp.* is particularly germane to this case. There, plaintiff TMTV produced and aired a television program known as "20 Pisos de Historia." Once TMTV discontinued its "20 Pisos' program, Defendant Pegasus Broadcasting began airing a program known as "El Condominio," featuring the same actors portraying the same or similar characters as those in "20 Pisos." *TMTV*, 392 F. Supp. 2d at 231. TMTV asserted claims for false designation of origin under the Lanham Act, contending that defendants' broadcasting of "El Condominio" "is likely to confuse and mislead the public and others to induce the mistaken belief that defendants' sitcom is in some way associated with, endorsed or sponsored by Plaintiff or in some way connected with plaintiff." *Id.* at 237. The court *sua sponte* dismissed TMTV's Section 43(a)

claim, finding that TMTV did not allege that the defendants falsely identified TMTV as the creator of "El Condominio." Most pertinently, the court ruled that "TMTV's purported Lanham Act claims effectively are claims that [defendants] made use of its creative ideas without crediting it and are barred under *Dastar* . . . ." *Id.*

Under this same analysis, the rule of *Dastar* squarely applies here. Plaintiffs allege that they (through their predecessor, White Wolf) conceived of, and own rights to, certain creative elements—the concept of a vampire-like character named "Gangrel." The essence of Plaintiffs' claims is that these creative elements were embodied in goods and/or services offered for sale in the marketplace by someone else, i.e., WWE through its *RAW* and *SmackDown* television programs, live shows, and promoted through WWE's website at www.wwe.com.[2] *See* Complaint at ¶¶ 30, 35-40.

Just as the unsuccessful plaintiffs in *Dastar*, Plaintiffs' here are fundamentally asserting the same claim for "reverse passing off." Plaintiffs contend that by failing to credit them as the alleged "creators" or "authors" of the

---

[2]    Assuming *arguendo* WWE can be held liable for allegedly "allowing" Mr. Heath to appear as Gangrel for other wrestling promotions, including Ohio Valley Wrestling and Deep South Wrestling, there is no allegation that any such wrestling shows promoted to the public under anything other than their own name and thus they similarly were the "origin" of the goods and/or services offered for sale in the marketplace.

10

vampire-like character, "Gangrel," WWE supposedly is misrepresenting that it is the origin of this character and/or insinuating that its programming is somehow affiliated with or sponsored by Plaintiffs. *See Dastar,* 539 U.S. at 27 n.1 (describing plaintiffs' "reverse passing off" claim as where "the producer misrepresents someone else's goods or services as his own"); *see also TMTV*, 490 F. Supp.2d at 237 (describing plaintiff's Section 43(a) claim as an allegation that defendants' use of plaintiffs' concept or idea gives rise to the impression that such incorporation was through some arrangement with plaintiff).

Under *Dastar* and its progeny, however, WWE's conduct as pled in Plaintiffs' Complaint is not a "false designation of origin" under Section 43(a). The "origin" of WWE's goods and/or services—i.e., its live and televised programs and www.wwe.com internet website—that are offered for sale in the marketplace indisputably is WWE. That elements of Plaintiffs' vampire-like character "Gangrel" allegedly are embodied in certain such goods and/or services offered by WWE is not actionable under the Lanham Act but rather subject to protection under copyright law, if at all. *See Dastar,* 539 U.S. at 33 ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."); *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263 (S.D.N.Y. 2005) ("The right to copy creative works, with or

11

without attribution, is the domain of copyright, not of trademark or unfair competition.").

"*Dastar* makes clear that a claim that a defendant's failure to credit the plaintiff on the defendant's goods is actionable only where the defendant literally repackages the plaintiff's goods and sells them as the defendant's own . . . ." *Williams,* 281 F. Supp. 2d at 1184; *see also A Slice of Pie Prods.*, 392 F. Supp. 2d at 313 ("[I]f plaintiff here had produced a film of *Johnny Bronx* and released it on video cassette, and if defendants had then purchased copies of the *Johnny Bronx* video and repackaged them as *White Chicks* videos for sale to the public, plaintiff would have a Lanham Act claim. However, where defendants are alleged only to have appropriated 'the originality' of the screenplay, the Lanham Act does not apply."). Significantly, Plaintiffs' Complaint makes no allegation that WWE somehow took Plaintiffs' *Vampire: the Masquerade* game or any derivative products and misrepresented them as WWE's own. To the contrary, Plaintiffs concede and indeed trumpet that WWE's live and televised programs were clearly marketed by WWE as being produced by WWE—that is the fundamental basis for Plaintiffs' claims.

Accordingly, Plaintiffs have failed to state a cognizable claim for false designation of origin under Section 43(a) of the Lanham Act and, therefore, Count I of their Complaint should be dismissed with prejudice.

### C. Plaintiffs' Claims for Deceptive Trade Practices and Unfair Competition Under Georgia Law Apply The Same Analysis As the Lanham Act And Thus Are Equally Foreclosed By *Dastar*

Controlling law holds that Plaintiffs' claims under the Georgia Uniform Deceptive Trade Practices Act and the Georgia Law are analyzed under the same standard as false designation of origin under Section 43(a).[3]  *See Quantum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1248 n.11 (11th Cir. 2007) (noting that the "analysis of a Georgia unfair competition claim is 'co-extensive' with the analysis of a Lanham Act claim"); *University of Georgia Athletic Ass'n. v. Latte*, 756 F.2d 1535, 1539 at n. 11 (noting that the standards governing claims for deceptive trade practice and unfair competition under Georgia law are the same as those governing Lanham Act claims) (*citing Amstar Corp. v. Dominoes Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir. 1980) (recognizing that causes of action under the Georgia Deceptive Trade Practices Act and Georgia's Law Against Unfair Competition involve the same dispositive question as that for false designation of origin under the federal Lanham Act.).

---

[3]   Count III of Plaintiffs' Complaint for "Fraud Pursuant to O.C.G.A. § 23-2-55" refers to a subpart of the Georgia Law Against Unfair Competition.

13

In fact, this Court has specifically dismissed such analogous Georgia state law claims based on the concurrent dismissal of a Section 43(a) claim under *Dastar*. *See Impreglon, Inc. v. Newco Enterprises, Inc.*, 508 F. Supp. 2d 1222, 1242 (N.D. Ga. 2007) (dismissing claims under both Section 43(a) and the Georgia Uniform Deceptive Trade Practices Act under *Dastar*);. Because Plaintiffs Lanham Act claim is foreclosed by *Dastar*, as described in detail above, Plaintiffs' Georgia Uniform Deceptive Trade Practices Act and Georgia Law Against Unfair Competition claims similarly should be dismissed with prejudice.[4]

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs' Complaint in its entirety should be dismissed with prejudice.

Respectfully submitted,

**/S/ John L. Taylor, Jr.**
Attorneys for Defendant World Wrestling Entertainment, Inc.

---

[4] If this Court finds that Plaintiffs' Lanham Act claim is foreclosed under *Dastar* but declines to dismiss Plaintiffs' state law claims on the same basis, this action nevertheless should be dismissed in its entirety because "when the federal law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Eubanks v. Gerwen*, 40 F.3d 1157, 1161-62 (11th Cir. 1994) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

14

John L. Taylor, Jr.
Georgia State Bar No. 700400
Otto F. Feil
Georgia State Bar No. 257288
**CHOREY, TAYLOR & FEIL**
The Lenox Building, Suite 1700
3399 Peachtree Road, N.E.
Atlanta, Georgia 30326-1148
Telephone: 404-841-3200

Jerry S. McDevitt
Curtis B. Krasik
**KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP**
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA  15222
Telephone: (412) 355-6500

## LR 5.1(B) CERTIFICATION

Pursuant to Local Rule 5.1(B), counsel for Defendant World Wrestling Entertainment, Inc. hereby certifies that this pleading has been prepared with Times New Roman 14 pt. font as required by the Rule.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CCP HF and CCP NORTH AMERICA, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION FILE ) NO. 1:08-CV-0490-MHS ) |
| WORLD WRESTLING ENTERTAINMENT, INC., | ) ) ) |
| Defendant. | ) ) ) |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **Memorandum of Law in Support of Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorneys of record:

Steven M. Kushner, Esq. **(skushner@fellab.com)**
Thomas J. Mihill, Esq.    **(tmihill@fellab.com)**
**FELLOWS LaBRIOLA LLP**
Peachtree Center
Suite 2300, South Tower
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
Tel: (404) 586-9200
Fax: (404) 586-9201
Attorneys for Plaintiffs
CCP hf and CCP North America, Inc.

16

This 19th day of March, 2008.

                                          **/S/ Sanjay Ghosh**
                                          Attorney for
                                          Defendant World Wrestling
                                          Entertainment, Inc.

Sanjay Ghosh
Georgia State Bar No. 141611
**CHOREY, TAYLOR & FEIL, A Professional Corporation**
The Lenox Building, Suite 1700
3399 Peachtree Road, N.E.
Atlanta, Georgia  30326-1148
Telephone:  404-841-3200
Facsimile:   404-841-3221
Email: sghosh@ctflegal.com