IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CCP hf and CCP NORTH AMERICA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CIVIL ACTION |
| Vs. | ) ) | FILE NO.: 08-CV-0490-MHS |
| WORLD WRESTLING ENTERTAINMENT, INC., | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs CCP hf and CCP North America, Inc. (hereinafter collectively referred to as "CCP") hereby respond to Defendant World Wrestling Entertainment, Inc.'s ("WWE") Motion to Dismiss, showing the Court as follows:

## I.   Introduction

Defendant WWE misrepresents CCP's claim in an effort confuse the issues and apply case law that it knows has no connection to CCP's trademark infringement claims.  WWE's primary contention, on which it bases its entire Motion to Dismiss, is that CCP claims that WWE's "alleged depiction of a vampire-like character named 'Gangrel'" violated CCP's intellectual property rights in the creative depiction of such a character.  (WWE's Memorandum of Law

1

in Support of Motion to Dismiss ("WWE's Memorandum"), p. 1). WWE then asserts that this supposed contention of CCP, which, as addressed below is false on its face, is precluded by Dastar v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003).

In Dastar, the plaintiffs sought to protect the **content** of a television series under the Lanham Act by claiming that selling the plaintiff's television series under Dastar's name constituted reverse passing off[1]. Dastar, 539 U.S. at 27. The Supreme Court determined that the failure to attribute the source of the creative content did not give rise to a Lanham Act claim and further would conflict with the rights set forth in the Copyright Act. Dastar, 539 U.S. at 33-35. Therefore, "the clear import of Dastar is that any protection for the misappropriation of . . . content comes from the Copyright Act, not from the Lanham Act." A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment, 392 F. Supp. 2d 297, 313 (D.Conn., 2005). In all the cases following Dastar, and relied upon by WWE, the plaintiff was attempting to use the Lanham Act, in addition to the Copyright Act, to protect content, which is intellectual property exclusively covered by the Copyright Act.

---

[1] The content did not have copyright protection because it had fallen into the public domain.

Neither <u>Dastar</u> nor any of the other cases cited by WWE have any application to CCP's claims. Despite WWE's allegations in its motion and brief, CCP is not trying to protect a specific character or storyline. Rather, CCP sued WWE for damages arising from WWE's infringement of CCP's trademark "Gangrel," which WWE uses for a particular wrestler in its stable. The misappropriation of CCP's "Gangrel" trademark clearly gives rise to claims under the Lanham Act.

The fallacy of WWE's motion is exposed both by WWE's extensive editing of the Lanham Act and CCP's complaint to fit its argument and the clear factual distinction between CCP's claims and those of the plaintiffs in <u>Dastar</u> and the line of cases following it.

## II.  Factual Background

As set forth in CCP's Complaint ("Complaint"), the facts in this case are as follows. CCP is the successor in interest to all intellectual property interests owned by White Wolf. (Complaint, ¶¶ 9-10). One of White Wolf's signature product lines, now owned by CCP, is *Vampire: the Masquerade*, a role-playing game, and its derivative works. (Complaint, ¶ 12).

In *Vampire: the Masquerade*, White Wolf created fanciful and distinctive clan names for the clans of its vampire characters, with one of those clan names

being "Gangrel."[2] (Complaint, ¶¶ 14-15). The term "Gangrel" was first used in commerce in 1991, and has been continually used in commerce by White Wolf and CCP to the present day. (Complaint, ¶ 16). CCP has used and intends to continue using the mark "Gangrel" in commerce in various markets, including print media, online media, computer games, and merchandise. (Complaint, ¶ 17).

In 1998, Titan, the predecessor entity to WWE, began promoting David Heath, a wrestler under contract to Titan, as a vampire known as "Gangrel." (Complaint, ¶¶ 18-19). White Wolf contacted Titan regarding its infringement of White Wolf's trademark rights in and to the term "Gangrel," and Titan and White Wolf entered into a license agreement (the "License") through which Titan obtained the right to use the "Gangrel" mark in connection with wrestling entertainment. (Complaint, ¶¶ 20-21).

Pursuant to the License, Titan, and later WWE, promoted David Heath as a vampire called Gangrel and permitted him to wrestle as a vampire called Gangrel at numerous World Wrestling Federation and World Wrestling Entertainment events, including live events, televised events, and pay-per-view events. (Complaint, ¶¶ 24-25). Upon the expiration of the License, however, WWE declined to and did not exercise its option to renew the License. (Complaint, ¶ 27).

---

[2] "Gangrel" is the clan name for a group of vampires exhibiting certain characteristics, not the name of any specific vampire or character.

Notwithstanding the expiration of the License, WWE continued to use CCP's trademark from 2004 through at least December of 2007. (Complaint, ¶¶ 29-41).

### III.   Argument and Citation to Law

#### *A.   Legal Standard*

The standard of review for a Rule 12(b)(6) motion is for the most part correctly set forth by WWE. However, WWE carefully omitted certain elements of the standard. One important element omitted is that "[o]n a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." Jackson v. Bellsouth Communications, 372 F.3d 1250, 1262 (11th Cir. 2004).

Further, WWE overstates the Supreme Court's holding in Bell Atlantic Corp. v. Twombly and its application to this case. The Supreme Court specifically stated, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." --- U.S. ---, 127 S.Ct. 1955, 1974 (2007). Post Twombly, a motion to dismiss should be granted only when the movant demonstrates that the plaintiff has not put forth allegations that plausibly suggest, and are not merely consistent with, a violation of the law. Twombly, at 1966; Davis v. Coca-Cola Bottling Co. Consolidated, 516 F.3d 955, 974 n.43 (11th Cir. 2008).

CCP has undeniably pled sufficient facts to state a claim to relief that is at least plausible on its face.  In contrast, WWE has failed to meet its burden to show that a Lanham Act violation has not been properly pled.

### B. *Dastar Is Inapplicable to Plaintiff's Claims*

WWE exclusively relies <u>Dastar</u> and the line of cases following it.  WWE claims that CCP is attempting to protect the creative idea of a vampire-like character named "Gangrel" through the false designation of origin standard under the Lanham Act (which is a misreading of CCP's claims), and that such a claim is foreclosed by the Supreme Court's ruling in <u>Dastar</u>.  WWE further contends that <u>Dastar</u> stands for the proposition that as long as the actual source of the goods is properly identified, there can be no Lanham Act claim for the creative ideas or content embodied in the goods.

While WWE's reading of <u>Dastar</u> is essentially correct, its attempts to apply <u>Dastar</u> to the facts at hand are misguided and misleading.  As a preliminary matter, it is important to note that WWE only focuses its brief on the false designation of origin element of Section 43(a) of the Lanham Act, whereas CCP's claim is far broader.  In fact, WWE, in its brief, goes so far as to edit out all language in its "quote" of Section 43(a) that define the other types of infringing behavior, all of which are included in Count I of CCP's Complaint.

Section 43(a) of the Lanham Act properly reads in its entirety as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any **word, term, name**, symbol, or device, or any combination thereof, or any **false designation of origin**, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125 (a)(1) (emphasis added).

Therefore, in addition to claims for false designations of origin, it is also improper to use "any word, term, [or] name" if such use "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. 1125 (a)(1).

CCP is not alleging claiming infringement for the content of WWE's productions, only for the use of CCP's trademark.  CCP's complaint clearly alleges that WWE has used the word "Gangrel" for the name of one of its wrestlers, and that use of this name is likely to cause confusion as to affiliation, association, sponsorship, or approval of CCP with this wrestler and WWE as a whole.  CCP also alleges that the continued use of "Gangrel" after the expiration of the License creates a false or misleading representation of fact that can cause confusion as to affiliation, association, sponsorship, or approval by or with CCP.  These claims all exist coextensively with and are included within CCP's Count I, which sets forth

8

WWE's violations of 43(a).

Furthermore, neither <u>Dastar</u> nor any other cases which follow it preclude CCP's claims in this matter.  Those cases are concerned solely with whether the Lanham Act protects a right to the originality of the content or idea embodied in the goods, which is properly protected by the Copyright Act and not the Lanham Act.  In <u>Dastar</u>, the defendant (Dastar) edited and repackaged portions of a public domain television series into a new videotape compilation, which it then manufactured and sold clearly labeled as a Dastar product.  <u>Dastar</u>, 539 U.S. at 26-27.  Given that the original television series had fallen into the public domain, the plaintiffs in that case sought to protect their series under the Lanham Act by claiming that selling the plaintiff's television series under Dastar's name constituted reverse passing off.  <u>Dastar</u>, 539 U.S. at 27.

The Supreme Court's review of the case hinged on whether the "origin of the goods" could include the creator of the original content of the videotapes. <u>Dastar</u>, 539 U.S. at 31.  The Supreme Court held that the origin of the goods was "the producer of the tangible product sold in the marketplace," and not "the person or entity that originated the ideas or communications that the goods embody or contain."  <u>Dastar</u>, 539 U.S. at 31-32.  The Supreme Court further determined that allowing a Lanham Act claim for a failure to attribute the source of the **creative**

9

**content** would conflict with the rights set forth in the Copyright Act.  Dastar, 539 U.S. at 33-35.  Dastar does not address and does not preclude a Lanham Act claim for the infringement of a trademark (such as "Gangrel") in an otherwise copyrightable work (such as a WWE scripted wrestling show).

Therefore, "the clear import of Dastar is that any protection for the misappropriation of . . . **content** comes from the Copyright Act, not from the Lanham Act."  A Slice of Pie Productions, 392 F. Supp. 2d at 313 (emphasis added).  The only type of Lanham Act claim forbidden by Dastar, then, is a claim relating to the creative or original content used in a tangible good manufactured by another.

The other cases cited by WWE reach the same result.  In all those cases, the plaintiff was attempting to use the Lanham Act to protect intellectual property properly covered by the Copyright Act.  See Zyla v. Wadsworth, a Division of Thomson Corp., 360 F.3d 243 (1st Cir. 2004) (co-author of college textbook claiming improper use of her sections in later editions without attribution); TMTV Corp. v. Pegasus Broadcasting of San Juan, 490 F. Supp. 2d 228 (D. Puerto Rico, 2007) (television producer alleging sitcom program was a derivative work and claiming false designation of ownership under Lanham Act); McArdle v. Mattel, Inc., 456 F. Supp. 2d 769 (E.D.Tex. 2006) (writer of children's stories suing over

allegedly infringing toys); Beckwith Builders, Inc. v. Depietri, 2006 WL 2645188 (D.N.H. 2006) (home builder alleging violation of architectural design); A Slice of Pie Productions (plaintiff screenwriter claimed defendants used its screenplay ideas in their film); Williams v. UMG Recordings, Inc., 281 F. Supp. 2d 1177 (C.D.Cal. 2003) (uncredited participant in production of motion picture suing for failure to attribute work).

Nothing in Dastar or its progeny suggests that a manufacturer of a tangible good may use another's trademarks with impunity. Rather, these cases merely state that the Copyright Act, rather than the Lanham Act, protects the idea or content embodied in the work.

Here, however, CCP is not trying to protect the idea or embodiment of a creative work. Despite WWE's allegations, CCP did not bring this suit to protect "a vampire-like character named Gangrel." Rather, CCP brought this action due to WWE's infringing use of "Gangrel," the undisputed trademark of CCP. Even after Dastar, no matter how obvious the source of the goods, one cannot use the trademarks of another in commerce.

WWE has used CCP's trademark in a variety of shows and venues. The fact that it was used on a "vampire-like character" certainly explains why WWE wanted to license the term "Gangrel" from CCP, as Gangrel is the name of a clan

11

of vampires in CCP's well-known role-playing game *Vampire: the Masquerade*.[3] (Complaint, ¶¶ 11-15). However, it is not the "vampire-like character" that infringes. Rather, it is the use of the trademark "Gangrel" in commerce by WWE after the expiration of the License.

It is also important to note that, unlike the material sought to be protected in Dastar and the cases following it, the word "Gangrel" is not subject to protection under the Copyright Act, as a single word or name cannot be copyrighted. 37 C.F.R. § 202.1 (detailing examples of works not subject to copyright protection, including "words and short phrases such as names, titles, and slogans"). Rather, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ." 17 U.S. C. § 102(a).

Therefore, nothing in the Dastar line of cases precludes CCP from bringing a Lanham Act claim, including a false designation of origin claim. CCP sued WWE for its repeated and willful infringement of its trademark "Gangrel," not to protect a creative idea or story element. It simply cannot be said, even in light of Dastar, that CCP has not stated facts sufficient to show a plausible violation of the Lanham Act by WWE, or that the facts alleged are merely speculative. Accordingly, WWE's Motion to Dismiss should be denied.

---

[3]  Of course, WWE acknowledged the validity of CCP's trademark and CCP's ownership of it in the License.

### C. *Dastar* Has No Effect on Plaintiff's State Law Claims

WWE cites to numerous cases that indicate that Georgia's Uniform Deceptive Trade Practices Act and Unfair Competition laws are analyzed in the same manner as Section 43(a) of the Lanham Act. WWE suggests that if CCP's claims are dismissed pursuant to Dastar, then CCP's state law claims should also be dismissed.

As shown above, however, the holding in Dastar has no relevance to the facts and claim in this case, and therefore WWE's motion on CCP's state law claims should likewise be denied.

### Conclusion

WWE does not deny the existence or validity of CCP's mark, nor does it deny that it used the mark. Rather, WWE tries to suggest that the mark is not in fact a trademark, but is a creative idea embodied in the "goods" produced by WWE. Since WWE contends it is clearly the source of the wrestling shows and television broadcasts, there can be no claim for violation of the Lanham Act by using the creative idea or creative materials of another.

While this is facially a correct analysis of Dastar, it is not a correct representation of CCP's claims or a proper application of Dastar. WWE only arrives at its argument and conclusions by ignoring and misstating the true facts

13

and law at issue. CCP brought suit to protect its "Gangrel" mark, not some imagined "Gangrel" character. WWE has used CCP's mark after the License expired, and thus infringed on CCP's trademark rights through use of the word "Gangrel" in commerce, through false designation of origin, and through false or misleading statements of fact, all of which create a likelihood of confusion as to affiliation, association, sponsorship, or approval by or with CCP. Accordingly, WWE's Motion must be denied.

Respectfully submitted, this 3rd day of April, 2008.

FELLOWS LABRIOLA LLP

<u>Thomas J. Mihill</u>
Steven M. Kushner
Georgia Bar No. 430510
Thomas J. Mihill
Georgia Bar No. 001363

Peachtree Center
Suite 2300, South Tower
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

Attorneys for Plaintiffs

## LR 7.1(D) Certification

Pursuant to Local Rule 7.1(D), counsel for Plaintiffs CCP hf and CCP North America, Inc. hereby certifies that this pleading has been prepared using Times New Roman 14 pt. font, as specified by LR 5.1(B).

s/Thomas J. Mihill
Thomas J. Mihill

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing pleading using the Court's CM/ECF system, which will send email notification to the following counsel of record:

>John L. Taylor, Jr., Esq.
>Otto F. Feil, Esq.
>Sanjay Ghosh, Esq.
>Chorey, Taylor, and Feil
>The Lennox Building, Suite 1700
>3399 Peachtree Road, N.E.
>Atlanta, GA 30326-1148

and notice will be sent by U.S. Mail with proper postage affixed thereon to the following counsel:

>Jerry S. McDevitt, Esq.
>Curtis B. Krasik, Esq.
>Kirkpatrick & Lockhart Preston Gates Ellis LLP
>Henry W. Oliver Building
>535 Smithfield Street
>Pittsburgh, PA 15222

This 3rd day of April, 2008.

>s/Thomas J. Mihill
>Thomas J. Mihill